UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT WOLFF,<br><br>       Plaintiff,<br><br>       v.<br><br>MEDALLIA, INC., BORGE HALD, AMY PRESSMAN, LESLIE STRETCH, LESLIE KILGORE, MITCH DAUERMAN, DOUG LEONE, JAMES D. WHITE, ROB BERNSHTEYN, STAN MERESMAN, and STEVE WALSKE,<br><br>       Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1. This action concerns a proposed transaction announced on July 26, 2021 (the "Proposed Transaction"), pursuant to which Medallia, Inc. ("Medallia" or the "Company") will be acquired by affiliates of Thoma Bravo, L.P.

2. On July 25, 2021, Medallia's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Medallia's stockholders will receive $34.00 in cash for each share of Medallia common stock they own.

3. On September 14, 2021, in order to convince Medallia's stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading

Definitive Proxy on Schedule 14A (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, a special meeting of Medallia stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Medallia stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NYSE, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Medallia shareholder.

10. Defendant Medallia is a Delaware corporation and a party to the Merger Agreement. Medallia shares are traded on the NYSE under the ticker symbol "MDLA."

11. Defendant Borge Hald is Chairman of the Board of Directors of the Company.

12. Defendant Amy Pressman is a director of the Company.

13. Defendant Leslie Stretch is President, Chief Executive Officer, and a director of the Company.

14. Defendant Leslie Kilgore is a director of the Company.

15. Defendant Mitch Dauerman is a director of the Company.

16. Defendant Doug Leone is a director of the Company.

17. Defendant James D. White is a director of the Company.

18. Defendant Rob Bernshteyn is a director of the Company.

19. Defendant Stan Meresman is a director of the Company.

20. Defendant Steve Walske is a director of the Company.

## FACTS

21. Medallia provides software-as-a-service customer experience management and employee experience management software to hospitality, retail, financial services, high-tech, and business-to-business companies internationally.

22.     On July 25, 2021, the Medallia Board caused the Company to enter into the Merger Agreement. The Merger Agreement provides, Medallia's stockholders will receive $34.00 in cash per share.

23.     On July 26, 2021, Medallia issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **SAN FRANCISCO**—Medallia, Inc. (NYSE: MDLA) ("Medallia"), the global leader in customer and employee experience, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, in an all-cash transaction that values Medallia at $6.4 billion. Through this transaction, Medallia will become a private company with additional resources and greater flexibility to build on its innovation leadership and expand its customer impact. Additionally, the transaction will allow Medallia to benefit from the operating capabilities, capital support and deep sector expertise of Thoma Bravo – one of the most experienced and successful software investors in the world.
>
> Under the terms of the agreement, Medallia shareholders will receive $34.00 per share in cash, which represents a premium of approximately 20% to Medallia's unaffected closing stock price on June 10, 2021, the last full trading day prior to media reports regarding a possible transaction, and a premium of approximately 29% to Medallia's unaffected 30-day average price.
>
> ***
>
> Advisors
>
> Morgan Stanley & Co. LLC is serving as lead financial advisor to Medallia, and BofA Securities and Wells Fargo Securities are also serving as financial advisors. Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as Medallia's legal advisor. Kirkland & Ellis LLP is serving as legal advisor to Thoma Bravo. Debt financing for the transaction is being provided by Blackstone Credit, certain funds managed by affiliates of Apollo Capital Management, L.P., KKR Credit, Thoma Bravo Credit and Antares Capital.

24.     Section 5.3 (b) of the Merger Agreement has a N*o Solicitation or Negotiation after the No-Shop Period Start Date*" clause that prevents Medallia from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> **Section 5.3 <u>No Solicitation by the Company; Company Change in Recommendation</u>**.

(b) *No Solicitation or Negotiation after the No-Shop Period Start Date.* Subject to Section 5.3(c), during the period commencing with the No-Shop Period Start Date and continuing during the remainder of Pre-Closing Period, the Company will, and will cause its Subsidiaries and its and their respective officers and directors, and will instruct and use reasonable best efforts to cause each of its other Representatives to, (A) cease and cause to be terminated any discussions or negotiations with, and terminate any data room access (or other access to diligence) of, any Person (other than any Excluded Party, but only for so long as such Person is and remains an Excluded Party) and its Representatives relating to an Acquisition Transaction that would otherwise be prohibited by this Section 5.3(b); and (B) deliver a written notice to each Person with whom discussions and negotiations are continuing as of the No-Shop Period Start Date (other than any Excluded Party, but only for so long as such Person is and remains an Excluded Party) to the effect that the Company is ending all discussions and negotiations with such Person with respect to any Acquisition Proposal effective on and from the No-Shop Period Start Date. Unless the Company has already so requested, promptly following the No-Shop Period Start Date, the Company will request that each Person (other than Parent and its Representatives) that has executed a confidentiality agreement in connection with its consideration of an Acquisition Transaction promptly return or destroy, in accordance with the terms of such confidentiality agreement, all non-public information furnished to such Person by or on behalf of the Company or its Subsidiaries prior to the date of this Agreement. Subject to Section 5.3(b) and Section 5.3(c) during the period commencing with the No-Shop Period Start Date and continuing during the remainder of Pre-Closing Period, the Company and its Subsidiaries, and their respective directors and executive officers, will not, and the Company will not authorize or direct any of its or its Subsidiaries' employees, consultants or other Representatives to, directly or indirectly, (i) solicit, initiate, propose or induce the making, submission or announcement of, or knowingly encourage, facilitate or assist, any proposal that constitutes, or is reasonably expected to lead to, an Acquisition Proposal; (ii) furnish to any Person (other than Parent, Merger Sub or any of their respective designees) any non-public information relating to the Company or any of its Subsidiaries or afford to any Person access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries (other than Parent, Merger Sub or any of their respective designees), in any such case in connection with any Acquisition Proposal or with the intent to induce the making, submission or announcement of, or to knowingly encourage, facilitate or assist, an Acquisition Proposal or the making of any proposal that would reasonably be expected to lead to an Acquisition Proposal; (iii) participate, or engage in discussions or negotiations, with any Person with respect to an Acquisition Proposal or with respect to any inquiries from third Persons relating to the making of an Acquisition Proposal (other than only informing such Persons of the provisions contained in this Section 5.3); (iv) approve, endorse or recommend any proposal that constitutes, or is reasonably expected to lead to, an Acquisition Proposal; (v) enter into any letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other Contract relating to an Acquisition Transaction, other than an Acceptable Confidentiality Agreement

(any such letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other Contract relating to an Acquisition Transaction, an "**Alternative Acquisition Agreement**"); or (vi) authorize or commit to do any of the foregoing. Following the No-Shop Period Start Dates, the Company will not be required to enforce, and will be permitted to waive, any provision of any "standstill" or confidentiality agreement to the extent that such provision prohibits or purports to prohibit a confidential proposal being made to the Company Board (or any committee thereof) if the Company has determined in good faith, after consultation with outside counsel, that failure to take such action would be inconsistent with its fiduciary duties under applicable Law.

25. In addition, Section 8.3 of the Merger Agreement requires Medallia to pay up to a $191,000,000 "termination fee" in the event this agreement is terminated by Medallia and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and restrictive to Medallia's ability to consider other offers.

26. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

27. As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy and misleading.

28. First, the Proxy omits material information regarding the Company's financial projections.

29. With respect to the Medallia's financial projections, the Proxy fails to disclose all line items used to calculate (i) Non-GAAP Operating Expenses, (ii) Non-GAAP EBIT; (iii) EBITDA; and (iv) Unlevered Free Cash Flow.

30. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

31.     Second, the Proxy omits material information regarding the analyses performed by Medallia's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") in connection with the Proposed Transaction.

32.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

33.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy fails to disclose: (i) estimated future net cash; (ii) future implied fully diluted equity value; (iii) estimated fully diluted shares outstanding for the Company; (iv) the inputs and assumptions underlying the use of a discount rate of 9.1%; and (v) the Company's estimated cost of equity.

34.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the Company's terminal values; (iii) the basis underlying the discount rate ranges of 7.7% to 9.6%; (iv) the basis underlying Morgan Stanley's use of perpetual growth rates ranging from 3.0% to 4.0%; and (v) Medallia's weighted average cost of capital.

35.     With respect to Morgan Stanley's *Selected Transactions Multiples Analysis* for the Company, the Proxy fails to disclose the time of announcement for each transaction observed.

36.     With respect to Morgan Stanley's *Illustrative Precedent Transaction Premiums* analysis, the Proxy fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums of each transaction.

37.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy fails to disclose: (i) the price targets for the Company used in the analysts; (ii) the sources of the price targets; and (iii) the basis underlying the use of the discount rate of 9.1% to the

range of analyst price targets.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39. The omission of the above-referenced material information renders the Proxy false and misleading.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants issued the Proxy with the intention of soliciting stockholder support for

the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

45. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

48.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

51.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input

on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 20, 2021

                                        **MOORE KUEHN, PLLC**

                                      */s/Justin Kuehn*
                                      Justin A. Kuehn
                                      Fletcher W. Moore
                                      30 Wall Street, 8th floor
                                      New York, New York 10005
                                      Tel: (212) 709-8245
                                      jkuehn@moorekuehn.com
                                      fmoore@moorekuehn.com
                                      *Attorneys for Plaintiff*